1  **Cara R. Burns (State Bar No. 137557)**
2  cburns@hmkblawyers.com
   **HICKS, MIMS, KAPLAN & BURNS**
3  3250 Ocean Park Blvd, Ste 350
   Santa Monica, California 90405
4  Telephone: (310) 314-1721
   Facsimile: (310) 314-1725
5
6  Attorneys for Plaintiff,
7  **LIVE NATION MERCHANDISE, INC.**

8              **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**
10
11  **LIVE NATION MERCHANDISE, INC.,**  )   Case No. **CV 12-3527-RGK CAGRN**
12              **Plaintiff,**               )   **MEMORANDUM OF POINTS**
                                          )   **AND AUTHORITIES IN**
13          **v.**                          )   **SUPPORT OF PLAINTIFF'S**
                                          )   **EX PARTE APPLICATION**
14  **JOHN DOES 1-5, JANE DOES 1-4 AND**  )   **FOR: A TEMPORARY**
15  **XYZ COMPANY,**                      )   **RESTRAINING ORDER; A**
                                          )   **SEIZURE ORDER;**
16              **Defendants.**             )   **AND AN ORDER TO SHOW**
                                          )   **CAUSE WHY A**
17                                          )   **PRELIMINARY INJUNCTION**
18                                          )   **AND SEIZURE ORDER**
                                          )   **SHOULD NOT ISSUE**
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I . INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  DEFENDANTS SHOULD BE ENJOINED FROM
SELLING, DISTRIBUTING, AND MANUFACTURING
INFRINGING MERCHANDISE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.  There Is A Substantial Likelihood That Plaintiff Will Prevail
On The Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        a.  Defendants Have Violated Section 1125(a) . . . . . . . . . . . . . . 4

        b.  Defendants Have Violated Section 1114 . . . . . . . . . . . . . . . . 7

        c.  Defendants Have Violated Plaintiff's Right of Publicity/Privacy.7

    2.  Plaintiff Will Suffer Irreparable Injury . . . . . . . . . . . . . . . . . . . . . . . 8

    3.  The Threatened Injury to Plaintiff Outweighs Potential
Harm to Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    4.  The Public Interest Will Be Served By Issuance Of
The Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  PLAINTIFF IS ENTITLED TO EX PARTE RELIEF
CONSISTING OF A TEMPORARY RESTRAINING ORDER
AND A SEIZURE ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    1.  An Injunction and Seizure Order Are Necessary
To Combat Defendants' Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    2.  Rule 65 of the Federal Rules Of Civil Procedure And
the Lanham Act Provide Authority For The Ex Parte Relief
Plaintiff Seeks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    3.  It Is Appropriate To Issue A Temporary Restraining And Search
Order To Enjoin Activities Of Persons Whose
Identities Are Presently Unknown. . . . . . . . . . . . . . . . . . . . . . . . . . 13

V. A MULTI DISTRICT TOUR INJUNCTION AND ORDER OF SEIZURE
ENJOINING DEFENDANTS' CONDUCT ACROSS THE COUNTRY IS
BOTH NECESSARY AND PROPER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   1. Courts Have Issued Nationwide Injunctions and Seizure Orders. . . . 15

   2. The Court Will Have Jurisdiction Over The Defendants
and Those Acting In Concert With Them. . . . . . . . . . . . . . . . . . . . . . 17

   3. Defendants Have A Full And Fair Opportunity To Be Heard . . . . . . 20

MEMORANDUM OF PS & AS IN SUPPORT OF TRO, ETC.

1

2                                    **<u>TABLE OF AUTHORITIES</u>**

3    <u>AMF, Inc. v. Sleekcraft Boats,</u>

4        599 F.2d 341(9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

5    <u>Anderson v. Hooper,</u>

6        498 F. Supp. 898 (D.N.M. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

7    <u>Apple Computer v. Formula International,</u>

8        725 F. 2d 521   (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **3**

9    <u>Babbitt v. United Farm Workers National Union,</u>

10       442 U.S. 289  (1979)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

11   <u>Benson v. Paul Winley Record Sales Corp.,</u>

12       452 F. Supp. 516 (S.D.N.Y. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

13   <u>Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics,</u>

14       403 U.S. 388, 91 S.Ct. 1999 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

15   <u>Boston Athletic Ass'n v. Sullivan,</u>

16       867 F.2d 22 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5, 6**

17   <u>Brockum Intern'l v. Various John Does,</u>

18       551 F. Supp. 1054 (E.D. Wisc. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

19   <u>Brockum Co. v. Blaylock,</u>

20       729 F.Supp. 438 (E.D. Pa. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4, 6**

21   <u>Brockum Co. v. Various John Does,</u>

22       685 F. Supp. 476 (E.D. Pa. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

23   <u>Corning Glass Works v. Jeannette Glass Co.,</u>

24       308 F. Supp. 1321 (S.D.N.Y.),

25       aff'd, 432 F.2d 784 (2d Cir 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

26   <u>E. Remy Martin & Co. v. International Imports, Inc.,</u>

27       756 F. 2d 1525 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

28

Five Platters, Inc. v. Purdie,
419 F. Supp. 372 (D. Md. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

Flast v. Cohen,
392 U.S. 83 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

Golden Door, Inc. v. Odisho,
437 F. Supp. 956 (N.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . **7, 14**

Hard Rock Cafe Licensing v. Pacific Graphics,
776 F. Supp. 1454 (W.D. Wash. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . **8**

Joel v. Does,
499 F. Supp. 791 (E.D. Wisc. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . **10, 13**

John Hancock Mutual Life Ins. Co. v. Central National Bank in Chicago,
555 F. Supp. 1026 (N.D. Ill. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . **12, 17**

McGraw_Edison Co. v. Performed Line Products,
362 F.2d 339 (9th Cir.) cert. denied, 385 U.S. 919 (1966) . . . . . . . . . . . . **17**

Moon Records v. Does,
17 U.S.P.Q. 39 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

Nassau v. Unimotorcyclists Soc. of America, Inc.,
59 F. Supp. 2d 1233 (M.D. Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . **5**

New West Corp. v. NYM Co. of California, Inc.,
595 F.2d 1194 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . **5, 7**

Nice Man Merchandising, Inc. v. Logocroft, Ltd.,
23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . **4, 6, 8**

Nintendo of America v. NTDEC,
822 F. Supp. 1462 (D. Ariz. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

Ocean Bio-Chem, Inc.,
741 F. Supp. 1554 (M.D. Fl 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

Plant v. Does,
    19 F. Supp.2d 1316 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15,16**

Regents of University of California v. ABC, Inc.,
    747 F.2d 511 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

R.H. Donnelley Corp. v. Illinois Bell Telephone.,
    595 F.Supp. 1202 (N.D. Ill. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

SKS Merch, LLC v. Barry,
    233 F. Supp. 2d 841 (E.D. Ky 2002) . . . . . . . . . . . . . . . . . . .4, 6, 7, 12, 15, 16

Universal City Studios, v. Kamma Industries,
    217 U.S.D.Q. 1162 (S.D. Tex. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

Vuitton, Et Fils, S.A. v. Carousel Handbags,
    362 F.2d 339 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**17**

Vuitton et Fils, S.A. v. Does,
    606 F.2d 1 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9,10**

Waffenschmidt v. Mackay,
    763 F. 2d 711 (5th 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

Winterland Concessions Co. v. Sileo,
    528 F.Supp. 1201 (N.D. Ill. 1981), mod. on other grounds,
    735 F.2d 257 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

Winterland Concessions Co. v. Creative Screen Design Ltd.,
    214 U.S.P.Q. 188 (N.D. Ill., 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

MEMORANDUM OF PS & AS IN SUPPORT OF TRO, ETC.

# I . INTRODUCTION.

Plaintiff Live Nation Merchandise, Inc. ("Plaintiff") submits this Memorandum in support of its Ex Parte Application for: a Temporary Restraining Order, a Seizure Order; and an Order to Show Cause Regarding Why A Preliminary Injunction and Seizure Order Should Not Issue (the "Order"). Plaintiff seeks this Order to stop the sale at concerts of unauthorized merchandise, and seize the same here as well as nationwide, which bears the federally registered trademarks,[1] servicemarks, likenesses, logos and other indicia of the popular music group **"COLDPLAY"** similar to ones granted by this Court to this Group and by this and other courts to other musical performers.[2] For the reasons stated below, such relief is warranted under the Lanham Act § 1051 et seq., F.R.C.P. Rule 65, and the All Writs Act.

## II.   STATEMENT OF FACTS.

On May 1 and 2, 2012 at the Hollywood Bowl, in Los Angeles, California, the group **"COLDPLAY"** (the "Group") will perform.  See the Declaration of Peter Weber ("Weber Decl.") and the Certificate of Counsel pursuant to F.R.C.P. Rule 65 of Cara R. Burns ("Burns Cert.") filed herewith.  Defendants currently identified as Does, also referred to as "Bootleggers," are currently engaged in the manufacture, distribution and sale of unauthorized T-Shirts and other merchandise that bear the federally registered trademarks, servicemarks, likenesses, logos and other indicia of the Group ("Infringing

---

[1] The Group has obtained Federal Trademark Registration Number 3557526   for their trademark "COLDPLAY" for use in connection with: International Class ("IC") 25 clothing; IC 16 paper and paper articles; IC 41 entertainment services; and IC 9 recordings. See Weber Decl. ¶ 6.

[2] See Signatures Network, Inc. v. Does, Case No. CV 08-4488 ABC (C.D. CA 2008) (Judge Collins) (for Coldplay's 2008-2009 tour); Live Nation Merchandise, Inc. v. Does, Case No. CV 11-4816 ABC (C.D. CA 2011) (Judge Collins) (for Motley Crue's tour); F.E.A., Inc. v. Does, Case No. CV 11-3024 ABC (CD CA 2011) (Judge Collins) (for Prince's tour); Live Nation Merchandise, Inc. v. Does, Case No. CV 10-5926 ABC (C.D. CA 2010) (Judge Collins) (for the Ozzfest tour). See Certificate of Counsel, Exhs A & B.

---

1 Merchandise") and will continue to do so at the concert in this District and at other sites
2 on the tour. Weber Decl. ¶¶ 3-24.

3    Bootleggers have plagued previous tours by the Group, as well as tours by other
4 artists.   To combat this, Plaintiff has obtained from this and other District Courts
5 temporary restraining and seizure orders, and thereafter nationwide seizure orders to
6 seize the unlawful merchandise of such defendants. See Certificate of Counsel and
7 Exhibits thereto.

8    Plaintiff easily meets the required showing and there is no defense to the claims
9 brought by Plaintiff.   Plaintiff is the exclusive licensee of the Group, and the sole
10 merchandiser for authorized merchandise which will be sold during his tour. Weber
11 Decl. ¶ 4. Plaintiff has therefore demonstrated a substantial likelihood that it will
12 succeed on the merits.   The Infringing Merchandise harms Plaintiff and the public in
13 numerous ways.    Each sale of Infringing Merchandise by Defendants is an
14 irrecoverably lost sale for Plaintiff.   Absent the relief requested herein, Plaintiff's
15 monetary losses could aggregate in the hundreds of thousands of dollars.  Moreover, the
16 loss and damage to the goodwill of Plaintiff and the Group through the distribution of
17 inferior merchandise which will necessarily be seen as associated with them, cannot be
18 calculated or remedied.  Weber Decl. ¶¶ 12-23; Burns Cert. ¶¶ 6-20.

19    The public interest will be served by issuance of the relief requested. The public
20 interest favors the protection of property/contractual rights. There is no potential harm
21 to any legitimate interest of Defendants if the requested relief is issued.  In addition, the
22 relief requested here is the only proven method of protecting Plaintiff's rights and the
23 public from inferior merchandise, merchandise which bears a false designation of origin
24 and created and sold by the Defendants, who are accountable to no one, whether for
25 payment of royalties, sales taxes, or for quality control. Weber Decl. ¶¶ 14-23.

26    The need for an ex parte order is manifestly evident.  Defendants' actions are
27 completely unauthorized, and Defendants have both the means and motivation to
28

1 destroy vital evidence before a noticed hearing and avoid service. Similar orders have
2 been obtained to protect the rights of merchandisers and distributors thereon against
3 bootleggers and their unauthorized goods. In response to these orders, although
4 thousands of bootleggers have been served, no defendant bootlegger has ever appeared
5 since apparently they know their activities are unlicensed and unlawful. See Burns Cert.
6 Accordingly, Plaintiff requests that this Court issue the requested order.

7 III. **DEFENDANTS SHOULD BE ENJOINED FROM SELLING,**
8 **DISTRIBUTING, AND MANUFACTURING INFRINGING MERCHANDISE.**

9 An action for a preliminary injunction will be granted if the moving party can
10 show either a combination of a probability of success on the merits and the possibility
11 of irreparable injury; or that serious questions are raised and the balance of the
12 hardships sharply tips in the movant's favor. <u>Apple Computer v. Formula International,</u>
13 725 F. 2d 521, 523 (9th Cir. 1984). Another test recognized in this circuit is the so called
14 "traditional test" which permits the moving party to satisfy its burden by
15 demonstrating:1) a string likelihood of success on the merits; 2) that the balance of
16 irreparable harm favors the movant; and 3) that the public interest favors granting the
17 injunction. <u>Regents of University of California v. ABC</u>, Inc., 747 F.2d 511, 515 (9th Cir.
18 1984). Whichever is applied, Plaintiff meets this standard.

19 A. <u>There Is A Substantial Likelihood That Plaintiff Will Prevail On</u>
20 <u>The Merits Because Defendants Have Violated Section 1125(a).</u>

21 Courts have repeatedly held that the use of registered and unregistered names,
22 images and logos of musical artists by bootleggers causes irreparable injury and
23 violates section 43(a) of the Lanham Act. <u>Brockum Co. v. Blaylock</u>, 729 F.Supp. 438,
24 444 (E.D. Pa. 1990) (there is no necessity under §43(a) that the marks in question be
25 registered); <u>SKS Merch, LLC v. Barry,</u> 233 F. Supp. 2d 841, 853-854 (E.D. Ky 2002)
26 (sales by Doe Defendant Bootleggers of merchandise bearing the unregistered marks of
27 the artist Toby Keith violates section 1125 (a) and a nationwide seizure order was
28 issued); <u>Winterland Concessions Co. v. Sileo</u>, 528 F.Supp. 1201 (N.D. Ill. 1981), mod.

1  on other grounds, 735 F.2d 257 (7th Cir. 1984); <u>Nice Man Merchandising, Inc. v.</u>
2  <u>Logocroft, Ltd.</u>, 23 U.S.P.Q. 2d 1290 (E.D. Pa.1992) (use of the names, trademarks,
3  logos and likenesses of musical groups on defendants' merchandise without permission
4  from plaintiff merchandiser "is likely to cause confusion, to cause mistake and to
5  deceive. Such confusion and/or deception will continue to result in immediate and
6  irreparable injury to plaintiff.")

7      The purpose of the Lanham Act is "to protect persons engaged in . . . commerce
8  against unfair competition" and "to prevent fraud and deception in such commerce." 15
9  U.S.C. §1127. This broad prohibition against "unfair competition" covers not only
10 confusion as to source or sponsorship between Defendants' Infringing Merchandise and
11 Plaintiff's merchandise, it also prohibits the misappropriation of the efforts of others.
12 See <u>R.H. Donnelly Corp. v. Illinois Bell Tel.</u>, 595 F.Supp.1202, 1206 (N.D. Ill. 1984)
13 ("those who invest time, money and energy into the development of a product and its
14 accompanying good will should be allowed to reap the advantages of their
15 investment");   <u>Boston Athletic v. Sullivan</u>,867F.2d 22, 33(1st Cir.1989) ("a party
16 cannot reap where it has not sown").

17     To establish a violation of section 43(a) "a plaintiff must demonstrate (1) that it is
18 the prior owner of the trademark, and (2) that the defendant adopted a trademark that is
19 the same or confusingly similar, so that consumers likely will be confused about the
20 proper origin of the goods or services, such that a consumer is likely to believe that
21 defendant's goods or services are being sold with the consent or authorization of the
22 plaintiff, or that defendant is affiliated with or connected to the plaintiff." <u>Ocean Bio-</u>
23 <u>Chem, Inc.</u>, 741 F. Supp. at 1554 (citation omitted); <u>Nassau v. Unimotorcyclists Soc. of</u>
24 <u>America, Inc.</u>, 59 F. Supp. 2d 1233, 1236, (M.D. Fla. 1999); <u>New West Corp. v. NYM</u>
25 <u>Co. of California, Inc.</u>, 595 F.2d 1194, 1201 (9th Cir. 1979) (for purposes of injunctive
26 relief, it is not necessary to show actual confusion or deception, but merely the
27 likelihood of such). These elements are clearly present here. The merchandise are

28

Hicks, Mims,
Kaplan & Burns
Attorneys at Law

1 goods, the Defendants travel from state to state and effect the sale of Plaintiff's
2 merchandise during the tour and, because of the use of Plaintiff's marks, there is the
3 false designation which is likely to confuse.

4     The Ninth Circuit has identified various factors to consider when determining
5 whether a likelihood of confusion exists: (1) the type of mark, (2) the similarity of the
6 marks, (3) the similarity of the parties' products or services, (4) the similarity of the
7 parties' retail outlets and customers, (5) the similarity of the advertising media used, (6)
8 the defendant's intent, and (7) the actual confusion engendered by the parties' uses.
9 Judged by these factors, Defendants' have violated the Lanham Act and there is no
10 excuse of Defendants' use of Plaintiff's marks. The trademarks, as well as the names,
11 likenesses, logos and other indicia of the Group are licensed to Plaintiff are strong
12 marks, known to literally millions of members of the public. Defendants are using the
13 same exact marks as Plaintiff and selling their unlawful products at the Group's
14 performances. Using the traditional scale of marks from the generic to the arbitrary, the
15 Group's marks are arbitrary in that they do not describe the goods to which they are
16 attached but instead provide identification, thus they have acquired secondary meaning
17 and are incontestable. Defendant Bootleggers will be copying the trademarks,
18 servicemarks, likenesses logos and other indicia of the Group, therefore there can be no
19 doubt as to consumer confusion. Weber Decl. ¶¶ 11-24. Since Defendants are aware of
20 the Group's use of their trademarks, there is a presumption of bad faith. See AMF, Inc.
21 v.Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir. 1979) (deception may be presumed
22 from the knowing adoption of a similar mark).

23     It is clear that the sale of unauthorized, bootleg T-shirts and other merchandise
24 bearing the names, logos or likenesses of well-known performers or groups constitutes
25 a violation of §43(a) of the Lanham Act. SKS Merch, supra, Nice Man Merchandising,
26 23 U.S.P.Q. at 1292 ("the use of well-known performers' names and likenesses upon
27 novelty merchandise without the performers' authorization constitutes a violation of
28

1 § 43(a)"); <u>Winterland Concessions Co. v. Creative Screen Design Ltd.</u>, 214 U.S.P.Q.

2 188 (N.D. Ill., 1981). As set forth by the District Court in <u>Brockum Co. v. Blaylock</u>:

> 3 Defendant [Bootlegger] cannot obtain a "freeride" at the [exclusive
> 4 licensee's] expense. Its shirts are designed to take advantage of the efforts
> and expenditures of the plaintiff and benefit from the goodwill associated
> 5 with the Rolling Stones, their 1989 tour, and the promotion of the event
> 6 created or undertaken by the plaintiff and the Rolling Stones. Such
> unlicensed use of the Rolling Stones' name would permit the defendant to
> 7 reap where it had not sown. <u>Boston Athletic Ass'n v. Sullivan</u>, 867 F.2d
> 8 22, 33 (1st Cir. 1989). Defendant's argument that the T-shirt in question
> merely celebrates an "event" is circular reasoning, at best, given the fact
> 9 that there would be no "event" to celebrate, were it not for the hard work
> 10 and financial outlay provided by the plaintiff. 729 F. Supp. at 444.

11 Defendants have manufactured Infringing Merchandise for the sole purpose of selling it

12 at the Group's concerts. It is beyond dispute that Defendants have and will continue to

13 knowingly utilize Plaintiff's marks to deceive the public and create the appearance that

14 Defendants' Infringing Merchandise is sponsored by or originated from Plaintiff, the

15 Group, and Plaintiff has no control over the quality of the merchandise. Defendants'

16 sale of Infringing Merchandise is intended to "free ride" on the marks, images and

17 likenesses of those the Group, that have acquired value through his extensive efforts.

18 This is precisely the conduct Section 43(a) was designed to stop.

19     **B.**    <u>**Defendants Have Violated Section 1114.**</u>

20     Under 15 U.S.C. § 1114, Plaintiff must show that Defendants have used the

21 registered trademark: (1) without consent; (2) in connection with the sales of goods;

22 and (3) where such use was likely to cause confusion or to deceive purchasers as to the

23 source or origin of the goods. <u>Golden Door, Inc., v. Odisho</u>, 437 F.Supp. 956, 962-63

24 (N.D. Cal. 1977), aff'd 646 F.2d 347 (9th Cir. 1980), overruled on other grounds. 287 F.

25 3d 866 (9th Cir. 2002).

26     Plaintiff is likely to prevail on its § 1114 claim, for the same reasons that it is

27 likely to prevail on its claim under § 1125(a). New West Corp. v. NYM CO. of

28

1  California, 595 F. 2d at 1201. ("The likelihood of confusion test also is used for claims
2  of trademark infringement under 15 U.S.C. 1114.). Since the Defendants use the
3  federally registered mark on Infringing Merchandise and sell such goods at the very
4  places where the Group will be performing, there can be no doubt as to the confusion
5  and intent of the Defendants.

6  **C. Defendants Have Violated Plaintiff's Right of Publicity.**

7  California Civil Code §3344(a) provides: Any person who knowingly uses
8  another's name, voice, signature, photograph of likeness in any manner, on or in
9  products, merchandise or goods or for the purposes of advertising or selling, or
10  soliciting purchases of products, merchandise, goods or services without such person's
11  prior consent, shall be liable for any damages sustained by persons injured as a result
12  thereof. This Civil Code Section expressly provides that its remedies are cumulative
13  and in addition to any provided by law.

14  There is also a common law right to privacy recognized in California which
15  provides protection against "appropriation for defendant's advantage, of the plaintiff's
16  name or likeness." Eastwood v. Superior Court, 139 Cal. App. 3d 409, 416 (1983);
17  Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 575-76 (1977). Violation
18  right to privacy is demonstrated by: 1) a defendant use of plaintiff's name or likeness; 2)
19  the defendant's use of plaintiff's identity is for defendant's commercial advents; 3)
20  plaintiff has not consented to the use; and 4) resulting injury. Eastwood v. Superior
21  Court, 149 Cal.App.3d at 417.

22  To plead a cause of action under §3344, in addition to the elements for violation
23  of privacy rights, one must plead a knowing use of the name or likeness. Id. Here,
24  Plaintiff possesses the exclusive right to exploit the names, likenesses, logos and other
25  indicia of the Group under its exclusive license and the right to prevent others from
26  exploiting them without permission. Defendants' use of the names, likenesses and logos
27  of the Group is undertaken to sell a product -- usually T-shirts or similar merchandise --
28

1 for commercial advantage and without any permission from Plaintiff. This sale will
2 occur at the concerts where the Group will perform; constituting knowing use.
3 Accordingly, every sale by Defendant Bootlegger violates the California rights to
4 publicity and privacy.

5      D.   **Plaintiff Will Suffer Irreparable Injury.**

6     Irreparable injury is presumed in the case of trademark infringement and Lanham
7 Act violations. <u>Camel Hair and Cashmere v. Associated Dry Goods</u>, 799 F.2d 6, 13 (1st
8 Cir.1989) ("There is considerable authority for the view that the irreparable injury
9 requirement is satisfied once it is shown that the defendant is wrongfully trading on the
10 plaintiff's reputation.") <u>E. Remy Martin & Co. v. International Imports, Inc.</u>, 756 F. 2d
11 1525, 1530 (11th Cir. 1985); <u>SKS Merch, LLC,</u> 233 F. Supp. 2d at 847 (although
12 irreparable injury is presumed once infringement is shown, "Plaintiffs have
13 independently established that they will be irreparably harmed absent a Preliminary
14 Injunction enjoining the sale of bootleg merchandise related to Toby Keith throughout
15 the nation."); <u>Nice Man Merchandising v. Logocroft, Ltd.</u>, supra; <u>Hard Rock Cafe</u>
16 <u>Licensing v. Pacific Graphics</u>, 776 F. Supp. 1454, 1463 (W.D. Wash. 1991) ("in
17 trademark infringement or unfair competition actions, once the plaintiff establishes a
18 likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer
19 irreparable harm.").

20     As set forth in the Weber Declaration, Plaintiff will be irreparably harmed by
21 the continuing sales by the Bootleggers. These peddlers appear at each venue, rarely
22 have identification or keep records of their sales. In addition, irreparable injury is
23 shown by the fact that Plaintiff has no control over the Infringing Merchandise or its
24 quality, and, accordingly, will suffer a loss of goodwill due to sales of inferior
25 Infringing Merchandise.

26 **E. The Threatened Injury to Plaintiff Outweighs Potential Harm.**

27
28     Plaintiff has demonstrated that the threatened injury to Plaintiff outweighs the

Hicks, Mims,
Kaplan & Burns
Attorneys at Law

1  potential harm to the Defendants. <u>Hard Rock Cafe,</u> 776 F. Supp. at 1463 (valuable
2  "Hard Rock Café" logo symbolizes the goodwill connected with [plaintiff's] business
3  and that good will should not be jeopardized by placing it in the hands of
4  [defendants].") Any inconvenience to Defendants will be merely economic, consisting
5  primarily of lost profits from distribution of the illegal, Infringing Merchandise (and a
6  bond will be posted by Plaintiff). Plaintiff will be seizing only Infringing Merchandise
7  from those Bootleggers at the concert venues. Those in active concert with, or assisting
8  the bootlegging are also violating the Lanham Act and must be enjoined, as provided
9  for by Rule 65.

10      F.    **The Public Interest Will Be Served By Issuance Of The Injunction**.

11      Plaintiff can show that the public interest is furthered by issuance of a
12  preliminary injunction. Indeed, one of the essential purposes of the Lanham Act is to
13  protect the consuming public from being misled as to the source of goods:

14      > While plaintiff is injured when consumers purchase [defendant's
        > merchandise] believing it to be [plaintiff's merchandise], consumers, too are
15      > being directly victimized. An injunction is thus in the public interest; only if
        > the distribution of [defendant's goods] is stopped can further fraud be avoided.
16

17  <u>Corning Glass Works v. Jeannette Glass Co.</u>, 308 F. Supp. 1321, 1328 (S.D.N.Y.),
18  aff'd, 432 F.2d 784 (2d Cir 1970). Public interest is especially strong when a federal
19  statute expressly forbids the conduct in question. Here, Defendants act in flagrant
20  disregard of the laws. In sum, Plaintiff is entitled to injunctive relief.

21  **IV. PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF A**
22  **TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER.**
    **A. The Order Is Necessary To Combat Defendants' Activities.**
23

24      Courts have issued temporary restraining order and orders of seizure in advance
25  of concerts to stop the sale of Infringing Merchandise. See Burns Cert. and Exhibits
26  thereto. This procedure is specifically authorized by statute;15 U.S.C. §1116 provides
27  for injunctions "upon such terms as the court may deem reasonable" to prevent
28

1 violations of Lanham Act. See, <u>In re Vuitton et Fils, S.A.</u>, 606 F.2d 1, 4 (2d Cir. 1979)

2 (court has inherent power to issue seizure orders); <u>Universal City Studios, v. Kamma</u>

3 <u>Industries</u>, 217 U.S.D.Q. 1162 (S.D. Tex. 1982). See also Burns Cert.

4      Moreover, the Lanham Act specifically contemplates that a temporary restraining

5 and seizure order against Infringing Merchandise may be had by ex parte application.

6 Section 1116 (d) authorizes ex parte orders where, in addition to the traditional

7 requirements for injunctive relief: (1) an order other than an ex parte seizure order is not

8 adequate, (2) the applicant has not publicized the requested seizure, and (3) the person

9 against whom seizure would be ordered would destroy or otherwise make inaccessible

10 to the court the infringing matters. 15 U.S.C. §1116(d)(4)(B).[3]

11      In the instant case, defendants are not yet specifically unidentified. It is clear

12 from the nature of their activities that they will be present in this jurisdiction only long

13 enough to sell their unauthorized goods. After the unauthorized goods are sold, they

14 will promptly disappear. Even if Defendants received notice and were served with a

15 proposed temporary restraining order, it is highly unlikely that they would voluntarily

16 comply and not sell their goods. See Weber Decl. and Burns Cert.    Simply stated,

17 there is no other means of preventing the Defendants from destroying Plaintiff's

18 legitimate business without a seizure order.

19      A Court of Equity must be flexible and must be willing to issue an injunction

20 appropriate under the particular circumstances of the case. See the All Writs Act, 28

21 U.S.C. § 1651 which broadly authorizes Federal Courts to issue "all writs necessary or

22

23 [3] In addition, by enacting the Trademark Counterfeiting Act of 1984, Congress did not

24 intend to change existing case law and precedent under Rule 65, the equitable powers of a
District Court under the Lanham Act, which has long been interpreted by courts

25 throughout the country to authorize the issuance of ex parte seizure orders involving

26 unregistered trademarks. The Act's legislative history makes clear it was not intended to

27 supersede or negate the line of cases beginning with <u>In Re Vuitton</u>, 606 F.2d 1, 4 (2d Cir.
1979), and the protection they provide.

28

     Memo in Support of Ex Parte App for a TRO

1  appropriate in the aid of their respective jurisdiction and agreeable to the usages and the
2  principles of law." Since there is no other remedy available to Plaintiff to prevent
3  irreparable injury, this Court has the power to order the seizure of illegal merchandise
4  as an exercise of its inherent power to obtain and retain jurisdiction in the matter. In
5  Joel v. Does, 499 F. Supp. 791 (E.D. Wisc. 1980), the Court stated:

> Were the injunction to be denied, Brockum would be without any legal
> means to prevent what is clearly a blatant infringement of their valid
> property rights. While the proposed remedy is novel, that in itself should
> not weigh against its adoption by this Court. A Court of Equity is free to
> fashion whatever remedies will adequately protect the rights of the parties
> before it. Id., at 792.

## B. Rule 65 of The Federal Rules Of Civil Procedure And the Lanham Act Provide Authority For The Ex Parte Relief Plaintiff Seeks.

Rule 65 of the Federal Rules of Civil Procedure permits the issuance of an ex parte temporary restraining order when failure to issue such an order would result in "immediate and irreparable injury, loss, or damage," and the movant demonstrates why notice should not be required. The irreparable harm from Defendants selling and distribution activities has been shown. It will continue to mount until Defendants are enjoined. Since Defendants have the temerity to conduct blatantly unlawful activities, their business is selling infringing articles, and have an economic interest in continuing their unlawful actions, there is no reason to believe they will voluntarily stop.

The Court in Vuitton, supra, found that immediate and irreparable injury existed because of the substantial likelihood of confusion created by the itinerant Bootleggers selling their unauthorized goods and plaintiff showed why notice should not be given:

> [A]lthough this Court has frowned upon temporary restraining orders
> issued even without telephone notice there are occasions when such
> orders are to be countenanced. In our judgment, this case is just such
> an occasion. [***] Assuming that all of the other requirements of
> Rule 65 are met, the Rule by its very terms allows for the issuance of
> an ex parte temporary restraining order when (1) the failure to issue it
> would result in "immediate and irreparable injury, loss or damage"

and (2) the applicant sufficiently demonstrates the reason that notice "should not be required." In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and to itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1). [* * *] If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of notice, and it is surely not what the authors of the rule either anticipated or intended. 606 F.2d at 4-5.

## C. It Is Appropriate To Issue A TRO And Seizure Order To Enjoin Activities Of Persons Whose Identities Are Presently Unknown.

Plaintiff is proceeding to stop the bootlegging activities of Defendants whose identities are presently unknown. Courts have long recognized that known adversaries may be designated as "John Does" until plaintiff is able to specifically identify them. See SKS Merch, supra, Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971); John Hancock Mutual Life Ins. Co. v. Central National Bank in Chicago, 555 F. Supp. 1026 (N.D. Ill. 1983). Plaintiff need not await the consummation of the threatened injury to obtain preventive relief. Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979); Anderson v. Hooper, 498 F. Supp. 898 (D.N.M. 1980). Indeed, any assertion to the contrary would constitute a conceptual rejection of provisional remedies available to a party who has sustained or is in immediate danger of sustaining a direct injury. Flast v. Cohen, 392 U.S. 83 (1968); Babbitt, supra, 442 U.S. at 298.

In circumstances similar to the facts herein, many federal courts have issued temporary restraining and seizure and impoundment orders to enjoin various Doe Defendants from manufacturing, distributing, selling and otherwise commercially exploiting infringing merchandise associated with the tours of musical performing artists. In each case, an ex parte order was issued against unidentified defendants, originally designated as Does, to prevent the sale and to seized of merchandise bearing the names, logos and trademarks of artists represented by the plaintiff in those actions.

1  See Burns Cert. and Exhs thereto.

2       In <u>Billy Joel v. Does</u>, supra, held that although the court does not favor unknown

3  defendants and may not have in personam jurisdiction, in the case of Bootleggers:

4       I am convinced that the requested injunction [and seizure order] should issue
5       in the present case. ... The problem of the defendants' identifies is met, I
        believe, by the fact that copies of the summons, complaint, and restraining
6       order itself will be served on all persons from whom Billy Joel merchandise is
7       seized on the night of the concert. These parties will be asked to reveal their
        names so that they can be added as parties to the law suit. [* * *] [w]ere the
8       injunction to be denied, plaintiffs would be without any legal means to
9       prevent what is clearly a blatant infringement of their valid property rights.
        499 F. Supp. at 792.
10

11       If courts failed to recognize "Doe" Defendants, clever wrongdoers could (and

12  will) easily conceal their true identities until a statute of limitations run out, or, as here,

13  they could leave Plaintiff with no practical recourse for violations of their rights. <u>Moon</u>

14  <u>Records</u>, 217 U.S.P.Q. 39 (N.D. Ill. 1981) ("the problem regarding the identity of the

15  defendants will be met by requiring copies of the complaint and the [order] to be served

16  upon all persons from whom infringing merchandise is seized..."). Consistent with

17  F.R.C.P Rule 4(j), Plaintiff's process servers will make every reasonable effort to

18  further identify the Defendants for purposes of amending the pleadings.

19       It has been the repeated experience of Plaintiff and Plaintiff's counsel that most,

20  if not all, of the Bootleggers are persons extremely experienced with selling Infringing

21  Merchandise.  Most are not neophytes, but rather somewhat sophisticated businessmen

22  who operate in stealth to thwart the legitimate rights of Plaintiff. Bootleggers travel

23  around the country from venue to venue selling their counterfeit wares.   Many

24  defendants even have the audacity to print the entire tour schedule of performers such

25  as the Group on the back of the bootleg T-shirts which they sell.  Any person found

26  selling a shirt bearing the entire Tour schedule can fairly be said to be "aiding and

27  abetting, or acting in active concert with," served Defendants who have sold similar

28  shirts at other concerts.

1  **V.  A MULTI DISTRICT TOUR INJUNCTION AND ORDER OF SEIZURE**
2  **ENJOINING DEFENDANTS' CONDUCT ACROSS THE COUNTRY IS**
3  **BOTH NECESSARY AND PROPER.**

4  **A.  Courts Have Issued Nationwide Injunctions and Seizure Orders.**

5  It has been shown by the declaration submitted in this matter that the sale of
6  Infringing Merchandise by the Defendants is in violation of the Lanham Act and causes
7  deception to the public.  As such, all remedies under the Lanham Act are appropriate
8  and have regularly been exercised by many courts across the country in factual and
9  legally identical circumstances.  The multi-district relief sought in Plaintiff's request for
10  a preliminary injunction and order of seizure has been granted in numerous cases in
11  other jurisdictions across the country. See Burns Cert. It is specifically authorized by
12  statute. Section 1116 provides for enforcement and service "anywhere in the United
13  States where [Defendants] may be found." 15 U.S.C. § 1116(a).  See Burns Cert. and
14  Weber Decl. Further, F.R.C.P. Rule 65 provides that an order granting injunctive relief
15  binds the named parties, those related to the named parties and those in active concert
16  or participation with them who receive actual or other notice of an order even if beyond
17  the territorial limits of the district court enjoining said activity. F.R.C.P. 65(d). See,
18  Nintendo of America v. NTDEC, 822 F. Supp. 1462, 1466, 1468 (D. Ariz. 1993) (the
19  Court issued a worldwide injunction requiring defendants to deliver up infringing goods
20  for destruction); Golden Door, Inc., supra, 437 F.Supp. 968 ("plaintiff's market area,
21  and hence, sphere of reputation, are nationwide. Accordingly, it is entitled to
22  nationwide protection against confusion and dilution.  The scope of the injunction must
23  therefore be nationwide"); The Five Platters, Inc. v. Purdie, 419 F. Supp. 372 (D. Md.
24  1976) ("the Lanham Act provides for nationwide enforcement of injunctions"); Benson
25  v. Paul Winley Record Sales Corp., 452 F. Supp. 516 (S.D.N.Y. 1978).

26  The propriety of such a multi-district order has long been established by
27  numerous district courts throughout the US, as explained herein and as explained at

28

1 length by the Fifth Circuit in <u>Waffenschmidt v. Mackay</u>, 763 F. 2d 711 (1985).

2
3
4
5
6
7
8

> Non-parties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum. [ * * * ] Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with. Id., at 714, 716 (citations omitted).

9
10
11
12
13
14

Two decisions address issues raised by this action. <u>SKS Merch, LLC v. Barry</u>, supra, and <u>Plant v. Does</u>, 19 F. Supp.2d 1316 (S.D. Fla. 1998). In both cases, Plaintiffs sought nationwide injunctions and seizure orders to enforce the rights of artist during a nationwide tour. The district court in <u>SKS Merch</u>, after careful review the <u>Plant</u> decision, as well as other adverse decisions,[4] decided to grant a nationwide injunction to seize unauthorized goods on essential three grounds.

15
16
17
18
19
20
21

First, the Court in <u>SKS Merch</u> noted that Plaintiff in Plant failed to attempt to identify any defendants. As set forth in the Weber Declaration and the Certificate of Counsel, Defendants have appeared from the very first concert date on prior tours, including for the tours covered by injunctions issued by this District (including for this particular Group) and other District Courts. To require Plaintiff to wait would seriously impede its rights. The merchandise will be taken and a bond will be posted. The harm

22

_____

23
24
25
26
27

[4] Two other known cases where similar relief was denied: <u>Brockum Intern'l v. Does</u>, 551 F. Supp. 1054 (E.D. Wisc. 1982) (decided soon after enactment of § 1116 (d) stating these issues are best left to local authorities); <u>Brockum Co. v. Does</u>, 685 F. Supp. 476 (E.D. Pa. 1988) (decided shortly after the 1116 took effect: the Court granted the local TRO and order of seizure, but declined to issue a national order because plaintiff had made an adequate showing that (1) the order requested would be carried out properly, and (2) it was the only realistic way to control the problem). For reasons set forth in <u>SKS Merch</u> and in the Certificate of Counsel, these cases should not be controlling.

28

-15-

Memo in Support of Ex Parte App for a TRO

1  to Plaintiff, however, is irreparable. The SKS Merch Court recognized what has been
2  the modus operendi of these Bootlegger Defendants – that they fail to carry
3  identification, they are well aware the goods they sell are unauthorized, and they flee
4  when approached by authorized individuals. Id., at 849. The person who ends up
5  suffering is that of the plaintiff merchandiser, who has no other recourse. Although the
6  plaintiff in SKS Merch waited for months before seeking injunctive relief, Plaintiff here
7  requests that it should not wait so long; with each performance it will be harmed, the
8  bootlegging will continue and the only one who will gain, and gain momentum, will be
9  the defendants.

10  Second, the Court in Plant was concerned that no "procedural means" existed to
11  issue and enforce the injunction. The Court in SKS Merch held section 1116 permits
12  such injunctionsm and that they be had on an ex parte basis.

13  Third, concerns about service raised in Plant are addressed here as they were in
14  SKS Merch; their names may be added after service has taken effect (if preferably
15  legitimate ones are provided). Because the goods are the same from location to
16  location, this represents a concerted effort and therefore they are on notice.

17  **B. The Court Will Have Jurisdiction Over The Defendants and Those**
18  **Acting In Concert With Them.**

19  Once the Defendants have been served at the concert, this Court acquires
20  personal jurisdiction over them. F.R.C.P. Rule 4. See John Hancock Mutual Life Ins.
21  Co. v. Central Nat'l Bank, 555 F. Supp. 1026 (N.D. Ill. 1983) (service of process under
22  Rule 4 confers jurisdiction on this Court even with respect to John Doe defendants). At
23  the hearing on the preliminary injunction, this Court should enjoin all the Bootlegging
24  activities during the entirety of the Group's nationwide tour. Absent such a nationwide
25  injunction, complete relief here would be impossible to achieve; separate orders would
26  have to be sought at every location on the tour. As a practical matter, such a series of
27  lawsuits is impossible, and would in any event result in a terrible waste of the parties'
28

1  and the federal courts' resources. As a result, this Court and many others have issued
2  nationwide preliminary injunctions and seizure orders to stop bootlegging. See Burns
3  Cert. and Weber Decl. In addition, 15 U.S.C. § 1116, specifically provides for
4  enforcement of this Court's orders in other districts.

5  The nationwide injunction will be effective against all persons involved in
6  Defendants' Bootlegging operation. Pursuant to F.R.C.P. Rule 65, an order granting
7  injunctive relief will bind not only the actual named parties to an action, but also "their
8  officers, agents, servants, employees and attorneys and those persons in active concert
9  or participation with them who receive actual notice of the Order by personal service or
10 otherwise. " F.R.C.P. Rule 65(d). <u>Vuitton, Et Fils, S.A. v. Carousel Handbags</u>, 362
11 F.2d 339, 344 (9th Cir. 1979) (a court may bind parties to preserve its ability to render a
12 judgment in a case over which it has jurisdiction); <u>McGraw Edison Co. v. Performed</u>
13 <u>Line Products</u>, 362 F.2d 339, 344 (9th Cir.) cert. denied, 385 U.S. 919 (1966) (non-
14 parties may be found in contempt of an injunction if they have actual notice of the
15 Order, and aid and abet in its violation). Thus, the Court may enjoin all participants in
16 the Bootlegging operation of which served Defendants are members.

17 The Bootlegging operation to be enjoined here is a concerted action of many
18 individuals acting together with the Defendants to be named in the preliminary
19 injunction. The nature and quality of merchandise seized indicates a concerted
20 operation. Indeed, for each tour, Plaintiff's employees frequently observe the same
21 individuals selling Infringing Merchandise at each of the tour's dates. The quantities of
22 such merchandise indicates a large manufacturing operation or operations that distribute
23 its goods at numerous, if not all, locations on previous tours. Identical shirts have been
24 found at several locations on other tours, indicating that the Bootleggers go from one
25 location on the tour to another to sell their merchandise. Therefore, any relief granted
26 to Plaintiff must continue throughout the tour and operate against these Defendants in
27 order to be effective. Weber Decl. ¶¶ 11-20.

28

Memo in Support of Ex Parte App for a TRO

Hicks, Mims,
Kaplan & Burns
Attorneys at Law

1    Each time there is a seizure pursuant to the order, the requirement of notice to the
2    person against whom the relief operates will be satisfied. Once the preliminary
3    injunction is issued it will be served on anyone selling Infringing Merchandise on the
4    tour. They will therefore have notice of the injunction at the concert and when their
5    goods are seized. A nationwide preliminary injunction against Defendants, those acting
6    in concert with them and others is appropriate and required if Plaintiff is to obtain relief
7    from Defendants' concerted unlawful acts.

8    **C. The Order Binds Those Who Participate in the Defendants' Unlawful**
9    **Conduct Beyond the Territory of this Court.**

10   By an appropriate bond placed with this Court by Plaintiff, Defendants always
11   have the right to be heard and are guaranteed a source of recovery for any wrongdoing
12   whatsoever to them. The only effective way for Plaintiff to obtain relief is to have this
13   Court enter a preliminary injunction and seizure order, the mandate of which will be
14   respected across this country. If the relief is not granted, Defendants will continue to
15   use the names and goodwill associated with the Group and Plaintiff who has spent
16   many years, and vast sums of money to cultivate.

17   It is believed that all seizures will be effected upon Bootleggers selling
18   substantially identical shirts throughout the country and will be through a concerted
19   operation. See Weber Decl. However, in the unlikely event that any individuals
20   spontaneously decide to print their own "homemade" shirts, such individuals would be
21   violating Plaintiff's rights and would be subject to suit in any event. Seizure of such
22   shirts, if any existed, would be virtually identical to seizure under a local order issued in
23   that district. Such a local order would not afford them any greater notice or due
24   process. Moreover, requiring Plaintiff to continue to go from court to court throughout
25   the tour would be to impose a great burden upon both Plaintiff and the judicial
26   resources of the federal courts. However, to avoid even a theoretical question, Plaintiff
27   will waive any objections to venue and transfer the action. Indeed, as to the national
28

1  seizure orders granted to Plaintiff, no defendant bootlegger has appeared in any action
2  or has made any challenges to any bond posted by Plaintiff. See Burns Cert.

3  ### D. **Defendants Have A Full And Fair Opportunity To Be Heard.**

4        Although it is not known at this time whether any Defendants will appear before
5  the Court on the return date to oppose the requested relief, given our experience, it is
6  doubtful that any will do so. However, they certainly have that opportunity. Plaintiff
7  would welcome such appearances for it would permit it to identify the bootleggers, take
8  discovery from them, discover their printing sources and pursue them for money
9  damages. The proposed Order will provide that a person who wishes to challenge the
10 seizure has the opportunity to file a motion with this or any other Court requesting a
11 hearing within a certain number of days subsequent to the seizure. This gives any
12 defendant a full and fair opportunity to be heard, while the merchandise, the critical
13 piece of evidence, is preserved. However, without the proposed nationwide injunction
14 and seizure order, Plaintiff will be forced to file separate civil actions in the United
15 States District Courts around the country at an estimated expense of hundreds of
16 thousands of dollars in legal fees and costs. Thus, it would be inequitable to place such
17 an enormous and unnecessary burden on Plaintiff whose rights are clear and who
18 evidence a remedy that works. Based on the foregoing, Plaintiff respectfully requests
19 that its application be granted in all respects.

20 Dated: April 24, 2012          Respectfully Submitted,
21                        LIVE NATION MERCHANDISE, INC.

22                        __/s/ Cara R. Burns_____
23                        Cara R. Burns, Esq. (Cal. Bar # 137557)
24                        Hicks, Mims, Kaplan & Burns, 3250 Ocean Park
                          Blvd, Ste 350, Santa Monica, California 90405
25
26
27
28