1  Cara R. Burns (State Bar No. 137557)
2  cburns@hmkblawyers.com
   HICKS, MIMS, KAPLAN & BURNS
3  3250 Ocean Park Blvd, Ste 350
4  Santa Monica, California 90405
   Telephone: (310) 314-1721
5  Facsimile: (310) 314-1725

6
   Attorneys for Plaintiff,
7  LIVE NATION MERCHANDISE, INC.

8
                 UNITED STATES DISTRICT COURT
9
                CENTRAL DISTRICT OF CALIFORNIA
10

11  LIVE NATION MERCHANDISE, INC.,  )   Case No. CV12-3527 - RGK
12            Plaintiff,            )   (AGRx)
                                    )   DECLARATION OF PETER
13        v.                        )   WEBER IN SUPPORT OF
14  JOHN DOES 1-5, JANE DOES 1-4 AND)   PLAINTIFF'S EX PARTE
    XYZ COMPANY,                    )   APPLICATION FOR A
15                                  )   TEMPORARY RESTRAINING
            Defendants.             )   ORDER, ETC.
16                                  )
                                    )
17

18     I, PETER WEBER, hereby declare as follows:

19     1.    I make this declaration in support of Live Nation Merchandise, Inc.'s

20  ("LNM") ex-parte application for: a temporary restraining order; seizure order; and

21  thereafter a preliminary injunction and seizure order to issue in the above referenced

22  matter similar to orders previously granted to by this District to us (LNM, formerly

23  known as Signatures Network, Inc.) for the musical group COLDPLAY's previous tour

24  and to this other musical groups. See Signatures Network, Inc. v. Does, Case No. 08-

25  4488 ABC (C.D. CA 2008) (Judge Collins) (for Coldplay's 2008-2009 tour), Exhibit A

26  to the Certificate of Counsel filed concurrently herewith. I have personal knowledge of

27  the facts set forth herein and am authorized by LNM to make this declaration. If called

28

Hicks, Mims,
Kaplan, and Burns
Attorneys at Law

Declaration of Weber

1    as a witness, I could and would be able to testify competently to such facts.

2      2.    LNM is engaged in the business of manufacturing, distributing and selling

3 authorized merchandise such as T-shirts, jerseys, sweatshirts, posters, among other

4 goods bearing the trademarks, servicemarks, likenesses, logos and other indicia owned

5 by popular musical groups and performers (collectively "Tour Merchandise").

6      3.    LNM has obtained the exclusive rights to distribute Tour Merchandise at

7 all concerts on the current North American concert tour (the "Tour") of the performing

8 group **"COLDPLAY"** (the "Group"). LNM has expended considerable monies in

9 obtaining the exclusive rights to distribute the Tour Merchandise of the Group.      A

10 Copy of the Group's current tour itinerary is attached as Exhibit "A" and is

11 incorporated by this reference as though fully set forth herein.

12      4.    I am Senior Vice President of Tour and Event Operations for Plaintiff

13 LNM. I have been employed by LNM or its predecessor, Signatures Network and Sony

14 Signatures, Inc. for over 15 years. Prior to that, I worked on merchandising of tours for

15 specific artists. My primary responsibility at LNM is merchandising and security on

16 popular music tours. LNM or its predecessors have obtained approximately 70

17 nationwide seizure orders.

18      5.    "COLDPLAY" is the trademark of this prominent and successful musical

19 performing group, in commercial use for nearly 14 years. The Group has released 5

20 albums which have sold over 50 million units. The Group's well known albums

21 include: " Viva la Vida;" "A Rush of Blood to the Head;" "X & Y;" and "Parachutes."

22 The Group's well known singles include: "Yellow;" "The Scientist;" "Speed of

23 Sound;" "In My Place;" "Trouble;" "Fix You;" "Clocks;" and "Moses." The Group has

24 been nominated for and won numerous awards, including being nominated for 30

25 "Grammy" awards from the National Academy of Recording Arts and Sciences,

26 winning 7 including in 2009 for Best Rock Album, Best Pop Vocal Performance by a

27 Duo or Group, and Song of the Year, and in 2003 for Best Alternative Music

28

1  Performance and Best Rock Vocal Performance by a Duo or Group.  The Group's
2  performances have been broadcast on MTV, VH1 and other cable and network
3  programs broadcast nationwide.   The Group has appeared on television programs
4  broadcast nationwide including Saturday Night Live, Jay Leno and Conan O'Brien. The
5  Group has also appeared in numerous magazines distributed nationwide, including the
6  covers of Rolling Stone, and in the Los Angeles Times.
7
8        6.    The Group has obtained Federal Trademark Registration Number 3557526
9  for their trademark "COLDPLAY" for use in connection with: International Class
10 ("IC") 25 clothing, namely, headwear; tops, bottoms, shirts, polo shirts, T-shirts,
11 sweatshirts, sweatpants, jackets, coats, pullovers, vests, articles of underclothing,
12 shorts, scarves, belts, socks, long-sleeved shirts and long sleeved T-shirts, pants, fleece
13 tops, thermal tops, jerseys, sweaters, tank tops, trousers, swim wear, beachwear, night
14 gowns, pajamas, bathrobes, wrist bands, head bands, slippers, shoes, sneakers and
15 sandals; IC 16 paper products, namely, trading cards, greeting cards, stationery, paper
16 cut-out figures, paper gift wrap, party goods, namely, paper cake decorations and paper
17 table cloths, pictures, posters, photographs, publications, namely, books, magazines,
18 newsletters, and bulletins featuring music and musical performances and entertainment,
19 address books, photo and stamp albums, banners of paper, music books, coloring and
20 children's books, calendars, pens and pencils, pen and pencil cases, erasers, markers,
21 crayons, chalk, art and crafts paint kits, greeting, note, and blank cards, writing and note
22 paper and pads, notebooks, book covers, picture books, decals, desk sets and personal
23 organizers, paper napkins, bathroom and facial tissue, tissue paper, paper place mats,
24 rubber stamps, adhesive backed note paper, stencils, construction paper, modeling clay,
25 bookmarks, iron transfer, lithographs, music and lyric sheets, fan magazines, pre-paid
26 telephone calling cards, not magnetically encoded, drawing rulers, binders for cd-roms,
27 painting sets for children with finger paints and poster paints, colored pencils, paint
28

Hicks, Mims,
Kaplan & Burns
Attorneys at Law

Declaration of Weber

books, diaries, blank journals, letter writing sets composed of stationery and pens, memorandum boards, stickers, temporary tattoos, checkbook covers, bumper stickers; IC 41 entertainment services, namely, live performances by a musical band, production of films and television programs featuring performances by a musical band, entertainment, namely, providing prerecorded musical performances on-line via a global computer network; and IC 9 recordings, namely  musical sound recording and musical video recordings in all media, motion picture films about musical bands, prerecorded data carriers in the nature of recording discs, discs, music cassettes, video cassettes, magnetic slides and transparencies, all featuring performances by a musical group, motion picture films featuring members of a musical group engaged in theatrical, orchestral, vocal, choral, choreographic, and cinematic presentations, eyeglasses, spectacles, spectacle frames, sunglasses, and eyeglasses cases.

7. This tour is highly anticipated. Accordingly, most of the Group's concert dates are sold out or almost sold out. Because of the Group's status among popular music enthusiasts, the tour is expected to be a very successful and Plaintiff Network anticipates that other dates will be added to the current Tour itinerary. The Tour involves many large-capacity venue performances, i.e., arenas seating in excess of 10,000 people. Gross income from the sales of Tour Merchandise is expected to be very substantial.

8. The Group derives income and promotes their images in part from sales of recordings and live performances, and in part through the sale of merchandise associated with them. The Group and Plaintiff spend a great deal of care, time and money in developing the merchandise associated with the concert tours. Care is taken that the Tour Merchandise bearing the Group's marks or likenesses are of a high quality and are appropriate to their images.

9. Tours by the Group, and other artists of their stature, have recurring problems with individuals who sell unauthorized Tour Merchandise near, at and

Declaration of Weber

1  sometime inside a concert venue.  These individuals are referred to as "Bootleggers,"
2  their activities are known as "Bootlegging" and their goods are referred to as "Bootleg
3  Merchandise" or "Unauthorized Merchandise."

4      10.    The Group has performed on many tours in their approximately 15 years
5  of performing.  On every major prior tour by the Group, Defendant Bootleggers have
6  appeared selling their unlawful goods.  In order to combat this on previous tours and on
7  tours by other artists, Plaintiff and other merchandisers have obtained temporary
8  restraining and seizure orders, and thereafter preliminary injunction and nationwide
9  seizure orders to seize the unauthorized goods from the Defendants.  An order has been
10  granted from this District for the Group's prior tour (note Plaintiff was previously
11  known as Signatures Network, Inc.): <u>Signatures Network, Inc. v. Does,</u> Case No. 08-
12  4488 ABC (C.D. CA 2008) (Judge Collins) (for Coldplay's 2008-2009 tour),  See
13  Certificate of Counsel of Cara R. Burns, filled concurrently herewith.

14      11.    In my experience, the Bootlegging problem has grown with the popularity
15  of popular music tours.  In virtually every instance, the Defendants sell identical shirts,
16  indicating that they are supplied from a common source.  Individual Bootleggers are
17  recognized from venue to venue as they follow the tours.

18      12.    My staff and I have followed a substantial amount of tours of various
19  artists and frequently observe the same individuals selling Unauthorized Merchandise at
20  many of the venues for each artist.  Organized Defendant Bootleggers generally follow
21  a tour themselves or arrange to have local individuals sell the Unauthorized
22  Merchandise for them.  On the past few tours, I have seen a few similar designs being
23  sold by the Defendants throughout the tour.

24      13.    In the present circumstances, given the Group's popularity, it is not
25  difficult to understand the motives of the Defendants. All of the concerts on this Tour
26  are expected to be sold out or nearly sold out.  The Group will perform before hundreds
27  of thousands of people by the end of the Tour.  The fans attending the various concerts

28

frequently seek to purchase a souvenir, such as a T-shirt. Defendant Bootleggers are typically (and were in this case) located outside the concert venues and therefore have the first and last opportunity to make these sales. Further some Defendants sell their Unauthorized Merchandise inside the venues.

14. Without an order, when members of my staff inform the Defendants that they are selling Unauthorized Merchandise, they usually just walk away and/or continue to sell the Unauthorized Merchandise. The Defendants do not respond when we asked for their names. All Defendants Bootleggers ignore our requests to stop selling unauthorized merchandise. The Defendant Bootleggers respond that they want to see our "injunction" or "order" or else they will not stop their unlawful activities. From the nature and context of their statements, it is obvious that the "order" or "injunction" they refer to is a search, seizure and impoundment order that we seek from this court. The shirts they were selling and offering for sale had the places where the tour would be performing, and contained the trademark, as well as images and logos of the tour which are exclusively licensed to Plaintiff to be sold at venues.

15. Based on my experience, these Defendants will appear at every performance set forth in Exhibit A to sell Unauthorized Merchandise, unless this Honorable Court grants to Plaintiff the order it seeks. Moreover, there appears to be a pattern to their Unauthorized Merchandise; each sell one of a few designs with the trademarks, service marks, likenesses, logos or other indicia of the Group. Also since some of these designs have all of the Tour dates on them, based on my experience, this indicates that they will continue to go from venue to venue and sell their Unauthorized Merchandise.

16. Bootlegging activities greatly injure musical performing artists, including the Group and legitimate merchandisers, including Plaintiff, in two ways. First, the Defendant Bootleggers are not bound by contract to provide first-quality apparel and graphic designs, as is required of Plaintiff. Second, the Defendant Bootleggers can

1 drastically undersell us, a legitimate merchandiser, because, unlike Plaintiff, Defendant
2 Bootleggers have no obligation to pay the Group royalties and do not have to pay any
3 part of their gross sales receipts to the concert venue. This ability to undersell the
4 legitimate Tour Merchandise is also enhanced by the fact that Defendant Bootleggers
5 do not collect or pay sales or income taxes.

6      17.    The consumer, the fans of the Group also suffer. Unauthorized
7 Merchandise is an inferior imitation which rarely lasts very long. The quality of the T-
8 shirts and the designs are poor; many T-shirts appear to be seconds and the colors on
9 the designs tend to "run" or "bleed" into each other. The fans are disappointed and, in
10 their confusion as to the source of the Unauthorized Merchandise, blame the artists.
11 This affects future legitimate sales and also tends to create a negative feeling by the
12 fans directed against the artists, which may in turn cause decreased record sales and
13 concert attendance.

14      18.    The Defendants' Unauthorized Merchandise is intended and will cause the
15 general public to believe that their Unauthorized Merchandise is authorized, approved
16 and sponsored by the Group. Consequently, not only does the sale of this Unauthorized
17 Merchandise violate Plaintiff's exclusive rights, but also causes the general public to be
18 adversely affected and irreparably harms Plaintiff 's and the Group's reputation for
19 excellence and integrity in the legitimate Tour Merchandise.

20      19.    The unchallenged presence of Defendant Bootleggers in our marketplace
21 destroys the market and damages Plaintiff's business at every level. Our business has
22 been built on making authorized Tour Merchandise available throughout the United
23 States on the Group's Tour.

24      20.    The precise damage to Plaintiff is incalculable. The Unauthorized
25 Merchandise sells for approximately half the price (or less) of the genuine Tour
26 Merchandise and the people involved in the illegal merchandising activities keep no
27 records. On the basis of my past experience with such Defendants, I believe these
28

1  Defendants would dispose of or destroy any Unauthorized Merchandise or related
2  documents should legal proceedings be commenced against them.

3      21.    The incalculable damage caused by the Defendants severely diminishes
4  our ability to make these products available, to say nothing of depriving the rightful
5  owners of their return.  We must therefore do everything we can to curtail the
6  Bootlegging activities of the Defendants and this is why we are seeking the assistance
7  of this Honorable Court to obtain an order allowing the seizure of Unauthorized
8  Merchandise.

9      22.    I believe the difficulties in identifying the Defendants, the fact that they
10  have no fixed place of business and no assignable assets, make them virtually immune
11  to normal process or to any process except by way of restraining order against persons
12  unknown and allowing the seizure of the Unauthorized Merchandise pending a final
13  disposition by this Honorable Court.

14      23.    Plaintiff is a substantial and successful business and will safely be able to
15  hereby undertake to meet any order made to compensate the Defendants or any of them
16  for any damages suffered by them as a result of any order obtained on our behalf.
17  However, in my experience, no Bootlegger has ever appeared at an order to show cause
18  hearing or sought relief in the countless number of nationwide search, seizure and
19  impoundment orders.

20      24.    In short absent significant protection from the courts, the Defendants have
21  an insurmountable advantage over the artists and legitimate merchandisers who obtain
22  the right to use performer's names, likenesses and related rights.  Left unprotected,
23  merchandisers will be unable to offer performers appropriate sums for these rights,
24  pertaining to artists' trademarks, servicemarks, likenesses, logos and other indicia.  This
25  in turn limits the performers, ability to stage unique and exciting concerts for their fans
26  and can, in some instances, prevent an artist from touring altogether.  The injury affects
27  the group, the exclusive licensee (Plaintiff), and the fans.

28

1       I declare under penalty of perjury under the laws of the United States and the

2   State of California that the foregoing is true and correct.  Executed April 23, 2012.

3

4                   PETER WEBER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT** A

**EXHIBIT A TO WEBER DECLARATION**

## COLDPLAY TOUR

| | | |
|---|---|---|
| Tue 05/01/12 | Los Angeles, CA | Hollywood Bowl |
| Wed 05/02/12 | Los Angeles, CA | Hollywood Bowl |
| Fri 05/04/12 | Los Angeles, CA | Hollywood Bowl |
| Fri 06/22/12 | Dallas, TX | American Airlines Center |
| Sat 06/23/12 | Dallas, TX | American Airlines Center |
| Mon 06/25/12 | Houston, TX | Toyota Center |
| Tue 06/26/12 | Houston, TX | Toyota Center |
| Thu 06/28/12 | Tampa, FL | Tampa Bay Times Forum |
| Fri 06/29/12 | Miami, FL | AmericanAirlines Arena |
| Mon 07/02/12 | Atlanta, GA | Philips Arena |
| Tue 07/03/12 | Charlotte, NC | Time Warner Cable Arena |
| Thu 07/05/12 | Philadelphia, PA | Wells Fargo Center |
| Fri 07/06/12 | Philadelphia, PA | Wells Fargo Center |
| Sun 07/08/12 | Washington, DC | Verizon Center |
| Mon 07/09/12 | Washington, DC | Verizon Center |
| Sun 07/29/12 | Boston, MA | TD Garden |
| Mon 07/30/12 | Boston, MA | TD Garden |
| Wed 08/01/12 | Auburn Hills, MI | The Palace Of Auburn Hills |
| Fri 08/03/12 | East Rutherford, NJ | IZOD Center |
| Sat 08/04/12 | East Rutherford, NJ | IZOD Center |
| Tue 08/07/12 | Chicago, IL | United Center |
| Wed 08/08/12 | Chicago, IL | United Center |
| Fri 08/10/12 | Saint Paul, MN | Xcel Energy Center |
| Sat 08/11/12 | Saint Paul, MN | Xcel Energy Center |

**Additional Dates To Be Added**

Exh A Page 10